# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | ID No. 1601004059 |
| | ) | |
| TARON HAMPTON, | ) | |
| Defendant. | ) | |

Submitted: July 21, 2020
Decided: July 27, 2020

## ORDER DENYING MOTIONS TO REDUCE OR MODIFY SENTENCE

This 27th day of July, 2020, upon consideration of the Defendant's Motions for Sentence Reduction (D.I. 20) and Sentence Modification (D.I. 19), the State's response thereto (D.I. 24) and the record in this matter, it appears to the Court that:

(1)    On the day Taron Hampton was scheduled for trial, September 13, 2016, he pleaded guilty to one count of Possession of a Firearm by a Person Prohibited (PFBPP) in exchange for dismissal of the other indicted charge.[1] Thereafter, on December 2, 2016, he was sentenced as follows:  15 years at Level V suspended after serving five years at Level V for ten years at Level IV-DOC Discretion, suspended after serving six months at Level IV DOC-Discretion for two years of supervised probation.[2]  Because of Mr. Hampton's previous violent felony

---

[1]    Plea Agreement, *State v. Taron Hampton*, I.D. No. 1601004059 (Del. Super. Ct. Sept. 13, 2016) (D.I. 15).

[2]    Sentence Order, *State v. Taron Hampton*, I.D. No. 1601004059 (Del. Super. Ct. Dec. 2, 2016) (D.I. 17).

conviction, the unsuspended five-year period of imprisonment for PFBPP was (and still is) a minimum term of incarceration that had to be imposed and could not be suspended or reduced.[3]

(2)     Mr. Hampton has now filed two Rule 35(b) motions.[4] Through the first he essentially requests the Court to reduce his Level V term to time-served.[5] He argues the Court should grant this Level V reduction now due to "extraordinary circumstances" brought on by the COVID-19 pandemic.[6] Through the second Mr. Hampton asks the Court to eliminate his Level IV term.[7] He suggests that the Court

---

[3]     DEL. CODE ANN. tit. 11, § 1448(e)(1)(b) (2015) (providing that any person convicted of PFBPP "shall receive a minimum sentence of: Five years at Level V, if the person does so within 10 years of the date of conviction for any violent felony or the date of termination of all periods of incarceration or confinement imposed pursuant to said conviction, whichever is the later date"). Mr. Hampton had prior 2009 convictions for robbery second degree, aggravated menacing, and conspiracy second degree. *See* Sentencing Order, *State v. State v. Taron Hampton*, I.D. No. 0901011977 (Del. Super. Ct. Jun. 4, 2009) (D.I. 8). Both second degree robbery and aggravated menacing were (and still are) violent felonies. DEL. CODE ANN. tit. 11, § 4201(c) (2015).

[4]     Super. Ct. Crim. R. 35(b) (providing that, under certain conditions, the Court may reduce a sentence of imprisonment on an inmate's motion; providing also that the Court may reduce a term or the conditions of partial confinement or probation); *Jones v. State*, 2003 WL 21210348, at *1 (Del. May 22, 2003) ("There is no separate procedure, other than that which is provided under Superior Court Criminal Rule 35, to reduce or modify a sentence.").

[5]     Def. 1st Rule 35(b) Mot. (D.I. 20).

[6]     *Id.* at 3-5.

[7]     Def. 2nd Rule 35(b) Mot. (D.I. 19).

eliminate that imposed Level IV term because he believes he will be housed in a work release center to serve out the final six months of his Level V incarceration.[8]

(3)    Mr. Hampton argues through both motions that the Court should grant the Level V reduction now due to "extraordinary circumstances" brought on by the COVID-19 pandemic.[9]  He posits that such reduction is appropriate because: (a) "the possible viral outbreaks of the COVID-19 [in the prison], and [his] underlying medical condition [of asthma], [] could very well put his life in jeopardy;"[10] (b) he "is a non-violent inmate who is serving a 5 year(s) sentence in which none of that is a minimum mandatory sentence for possession by a person prohibited;"[11] (c) he has completed numerous programs while incarcerated;[12] and (d) he believes he was "preapproved for the 180 program, (the last six months of his sentence reintegrating via work release), based on exceptional behavior programs, rehabilitation, and great work ethics."[13]

---

[8]    *Id.* at 4, 6; Def. 1st Rule 35(b) Mot., at 3-4.

[9]    Def. 1st Rule 35(b) Mot., at 3-5.

[10]    *Id.* at 3-4.

[11]    *Id.* at 4.

[12]    Def. 2nd Rule 35(b) Mot., at 4.

[13]    Def. 1st Rule 35(b) Mot., at 3-5.

(4)     The Court may consider these motions "without presentation, hearing or argument."[14]  The Court will decide his motion on the papers filed and the complete record in Mr. Hampton's case.

(5)     When considering motions for sentence reduction or modification, this Court addresses any applicable procedural bars before turning to the merits.[15]

(6)     "Rule 35(b) requires that an application to reduce imprisonment be filed promptly—i.e. within 90 days of the sentence's imposition—'otherwise, the Court loses jurisdiction' to act thereon."[16]  An exception to this bar exists:  to overcome the 90-day time limitation, an inmate seeking to reduce a sentence of imprisonment on his own motion must demonstrate "extraordinary circumstances."[17]  A heavy burden is placed on the inmate to establish "extraordinary circumstances" in order to uphold the finality of sentences.[18]

---

[14]  Super. Ct. Crim. R. 35(b).

[15]  *State v. Redden*, 111 A.3d 602, 606 (Del. Super. Ct. 2015).

[16]  *Redden*, 111 A.3d at 607 (internal citations omitted).

[17]  *Sample v. State*, 2012 WL 193761, at *1 (Del. Jan. 23, 2012) ("Under Rule 35(b), the Superior Court *only* has discretion to reduce a sentence upon motion made within 90 days of the imposition of sentence, *unless* 'extraordinary circumstances' are shown.") (emphasis added).

[18]  *State v. Diaz*, 2015 WL 1741768, at *2 (Del. Apr. 15, 2015) ("In order to uphold the finality of judgments, a heavy burden is placed on the defendant to prove extraordinary circumstances when a Rule 35 motion is filed outside of ninety days of the imposition of a sentence.").

(7)     The term "extraordinary circumstances" is generally defined as "[a] highly unusual set of facts that are not commonly associated with a particular thing or event."[19] "And for the purposes of Rule 35(b), 'extraordinary circumstances' have been found only 'when an offender faces some genuinely compelling change in circumstances that makes a resentencing urgent.'"[20] In short, Rule 35(b) is a rule limited to reconsideration and altering of a sentence after the 90-day motion deadline "only when there is a truly compelling change in that inmate's individual circumstances that presents an urgent need for revision of the sentence's terms."[21]

(8)     As this Court has recently and oft noted, no special early release rule or procedure has been created to address the current COVID-19 health crisis; the relief an inmate seeks through the type of motion Mr. Hampton has filed is governed by this Court's Criminal Rule 35(b).[22] Just incanting "COVID-19" is inadequate to

---

[19] *Diaz*, 2015 WL 1741768, at *2 (citing BLACK'S LAW DICTIONARY (10th ed. 2014)); *id.* (Observing also that, in the Rule 35(b) context, "'extraordinary circumstances' are those which 'specifically justify the delay;' are 'entirely beyond a petitioner's control;' and 'have prevented the applicant from seeking the remedy on a timely basis.'"); *State v. Remedio*, 108 A.3d 326, 332 (Del. Super. Ct. 2014).

[20] *State v. Thomas*, 220 A.3d 257, 262 (Del. Super. Ct. 2019) (quoting *Fountain v. State*, 139 A.3d 837, 842 n.20 (Del. 2016)).

[21] *Id.*

[22] *State v. Lindsey*, 2020 WL 4038015, at *2 (Del. Super. Ct. July 17, 2020).

shoulder the heavy burden placed on one to establish "extraordinary circumstances" under Rule 35(b).[23]

(9) Instead should Mr. Hampton's specific individual medical circumstance[24] warrant sentence reduction, then the proper vehicle to deliver such relief is an application by the Department of Correction (DOC) under 11 *Del. C.* § 4217. Good cause to reduce an inmate's level of custody or time to be served via a Section 4217 application specifically includes "serious medical illness or infirmity of the offender."[25] "It is indeed clear from Rule 35's language itself that an inmate's

---

[23] *E.g., State v. Colburn*, 2020 WL 3882560, at *1 (Del. Super. Ct. July 8, 2020) ("[M]ere incantation of COVID-19 as a ubiquitous 'health and economic [c]risis'" and "suggestion of 'prison over crowding and unsafe housing conditions that [don't] allow social distancing'" inadequate to establish "extraordinary circumstances."); *State v. Roberts*, 2020 WL 3063957, at *2 (Del. Super. Ct. June 8, 2020) ("generalized suggestion" of inmate's "underlying (but unidentified) health conditions" and "his statement of anxiety" over COVID-19 do not establish "extraordinary circumstances" under Rule 35(b)); *State v. Bednash*, 2020 WL 2917305, at *2 (Del. Super. Ct. June 3, 2020) (finding inmate's summary allegations of his medical conditions and vulnerability to COVID-19 do not establish "extraordinary circumstances" warranting a reduction or modification of his sentence under Rule 35(b)); *State v. Baker*, 2020 WL 2789703, at *1 (Del. Super. Ct. May 29, 2020) (inmate's mere suggestion of "his potential exposure to COVID-19 . . . has not set forth facts establishing 'extraordinary circumstances'").

[24] Upon the Court's order for a response to these motions, the State had Mr. Hampton's medical records reviewed by the Department of Correction's (DOC) medical director. That review confirmed that Mr. Hampton is presently a 36-year-old man with a past medical history of asthma, who is currently not on any medication for that asthma, but who has been in the past. In short, the review of his medical history evidences that Mr. Hampton has no acute medical issue and that his asthma is "reasonably well-controlled, even without the use of asthma-specific medications." State's Resp., at 2 (D.I. 24).

[25] DEL. CODE ANN. tit. 11, §§ 4217(b)-(c) (2015); *id.* at §§ 4217(d)(3)-(f)(setting forth specific provisions and exceptional procedures for DOC applications based on an inmates serious medical illness or infirmity).

emergent medical situation is not the stuff of which a claim of 'extraordinary circumstances' is made."[26] Rather such situations, when they arise, are properly addressed under Title 11, Section 4217.[27]

(10) But Mr. Hampton's failure to meet Rule 35's "extraordinary circumstance" criterion is not all that prohibits this Court from considering his time-barred prayer for reduction of his Level V term.

(11) Even were Rule 35's time bar inapplicable here, the Court still has no authority under that rule to reduce or suspend the mandatory portion of any substantive statutory minimum sentence.[28] There is no special COVID-19 early release rule that overcomes that prohibition either.[29]

(12) Again—while he seems to think otherwise—the five years of imprisonment for Mr. Hampton's PFBPP conviction is the minimum term of incarceration that must be imposed and cannot be suspended or reduced.[30] And Mr.

---

[26] *Lindsey*, 2020 WL 4038015, at *3. *But see State v. DeRoche*, 2003 WL 22293654 (Del. Super. Ct. Aug. 29, 2003) (where Court considered sentence modification for inmate who had actually suffered a heart attack because Court found, in fact, the DOC had failed to provide the inmate with adequate medical care under 11 *Del. C.* § 6536).

[27] *Lindsey*, 2020 WL 4038015, at *3.

[28] *State v. Sturgis*, 947 A.2d 1087, 1092 (Del. 2008) ("Superior Court Rule of Criminal Procedure 35(b) provides no authority for a reduction or suspension of the mandatory portion of a *substantive* statutory minimum sentence.") (emphasis in original).

[29] *Lindsey*, 2020 WL 4038015, at *3.

[30] *See* n.3, *supra.*; *see also Kelly v. State*, 2019 WL 6048093, at *1 (Del. Nov. 14, 2019).

Hampton's suggestion that he was all set to be housed at a Level IV work release center under the provisions of 11 *Del. C.* § 4205(h) for the last six months of his five-year imprisonment term makes no difference.[31] First, as the State's response has clarified, "on July 21, 2020, the DOC determined that, based on [Mr.] Hampton's criminal history and recent institutional discipline, it would not exercise its statutory discretion to move him to work release in the last 180 days of his sentence."[32] Second, even if Mr. Hampton were correct about where he was going, "housing a Level V inmate in a Level IV facility [pursuant to § 4205(h)] neither changes the commitment ordered by the sentencing Court nor modifies that inmate's sentence in anyway. Indeed, it cannot."[33] So one placed in a work release center under DOC's Section 4205(h) authority remains "a Level V inmate still serving [his] Level V term; [he's] just received the benefit of more favorable housing to complete the final 180 days of that Level V term."[34]

---

[31] Under § 4205(h), the DOC "may house Level V inmates at a Level IV work release center or halfway house during the last 180 days of their sentence." DEL. CODE ANN. tit. 11, § 4205(h) (2016).

[32] State's Resp., at 3.

[33] *State v. Pulgini*, 2020 WL 4036218, at *2 (Del. Super. Ct. July 15, 2020) (noting that "when the DOC exercises its § 4205(h) discretion, it does not change a single term of the sentence. Put simply, § 4205(h) grants the DOC limited discretion to house one who otherwise should be in a prison setting during the last 180 days of her sentence in a work release or halfway house facility instead. It does not convert that last 180 days to a Level IV term.").

[34] *Id.*

(13) Mr. Hampton has requested a Level V reduction would violate the five-year minimum required by 11 *Del. C.* § 1448(e)(1)(b). And that the Court cannot do[35]—even in the midst of a pandemic.

(14) As to Mr. Hampton's accompanying request to modify (*i.e.*, eliminate) the Level IV term his sentencing judge imposed, this is a first application for modification of his term of partial confinement or probation. So, there are no bars to consideration of your request under Rule 35(b).[36]

(15) If Mr. Hampton's prediction that § 4205(h) would be applied in his case—that he would actually spend his last six months of imprisonment housed in a Level IV work release facility participating in work release—had come true, the modification of the Court-imposed six-month Level IV certainly might make sense. Why have him effectively do double the Level IV time originally anticipated and imposed by his sentencing judge? But Mr. Hampton wasn't classified to § 4205(h) housing. And so his requested modification would mean a transition directly from prison to probation.

---

[35] *Kelly*, 2019 WL 6048093, at *2 ("To the extent Kelly seeks reduction of his PFBPP sentence under Rule 35(b), the Superior Court cannot reduce the mandatory portion of Kelley's sentence.).

[36] *See Teat v. State*, 2011 WL 4839042, at *1 (Del. Oct. 12, 2011) (finding this Court erred in holding that motion for modification of Level IV time was subject to ninety-day period but could be affirmed because motion was repetitive); *State v. Bennett*, 2015 WL 1746239, at *2 (Del. Super. Ct. Apr. 13, 2015) (bar to repetitive motions is applicable to requests for modification of a Level IV term of a sentence).

(16)   The Court has fully reviewed Mr. Hampton's application, the State's response, the record of Mr. Hampton's case, his prior supervision history, and all sentencing information available. The Court finds that the Level IV term—*i.e.* a period in a highly structured community-based supervision in a DOC-determined setting complimentary to the incarcerative term Mr. Hampton has served—is a component of his sentence that is integral to the Court's overall "sentencing scheme" or "plan."[37]

(17)   After thorough review of the merits of Mr. Hampton's request, the Court finds its original sentencing judgment regarding the Level IV component remains appropriate. In turn, the Court will exercise its discretion[38] under Rule 35(b) and deny Mr. Hampton's request to reduce or modify the Level IV term of his sentence.

(18)   **NOW, THEREFORE, IT IS ORDERED** that Mr. Hampton's motion for reduction of the Level V term of his sentence must be **DENIED** because it is both time-barred and seeks relief that is statutorily prohibited. **IT IS FURTHER**

---

[37]   *Defoe v. State*, 750 A.2d 1200, 1202 (Del.2000).

[38]   *Rondon v. State*, 2008 WL 187964, at *1 (Del. Jan. 15, 2008) ("The merit of a sentence modification under Rule 35(b) is directed to the sound discretion of the Superior Court."); *Kiser v. State*, 2010 WL 5141242, at *1 (Del. Dec. 10, 2010) (same for motion that seeks reduction or modification of partial confinement).

**ORDERED** that Mr. Hampton's motion for modification of the Level IV term of his sentence is **DENIED** for the reasons set forth above.

Paul R. Wallace, Judge

Original to Prothonotary

cc:    Mr. Taron Hampton, *pro se*
        Gregory E. Smith, Deputy Attorney General
        Investigative Services Office